# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: December 04, 2017

Mr. Irwin H. Cutler Jr.
Mr. Douglas Walter Greene
Mr. James Michael Hearon
Ms. Rebecca Grady Jennings
Mr. John A. Klages Jr.
Mr. Matthew P. Lynch
Mr. Dennis David Murrell
Mr. Edward King Poor
Mr. Alton D. Priddy

Re: Case No. 16-6761/16-6763/16-6772, *Douglas Greene v. Frost Brown Todd, et al*
Originating Case No. : 3:14-cv-00619

Dear Sir or Madam,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Bryant L. Crutcher
Case Manager
Direct Dial No. 513-564-7013

cc:  Ms. Vanessa L. Armstrong

Enclosure

Mandate to issue

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

Nos. 16-6761/6763/6772

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DOUGLAS WALTER GREENE, )
)
    Plaintiff-Appellant, )
)
v. )
)
FROST BROWN TODD, LLC; MARK FRANCIS )
SOMMER; TONY C. COLEMAN (16-6761); )
)
INDEPENDENT PILOTS ASSOCIATION; )
ROBERT TRAVIS, in his capacity as President of )
the Independent Pilots Association; ERICK )
GERDES, in his capacity as Vice President of the )
Independent Pilots Association; THOMAS )
KALFAS, in his capacity as Secretary of the )
Independent Pilots Association; BILL CASON, in )
his capacity as Treasurer of the Independent Pilots )
Association; HARRY TREFES, in his capacity as )
At Large Representative of the Independent Pilots )
Association (16-6763); )
)
IPA/UPS SYSTEM BOARD OF ADJUSTMENT; )
UNITED PARCEL SERVICE CO.; )
INDEPENDENT PILOTS ASSOCIATION )
(16-6772), )
)
    Defendants-Appellees. )

> **FILED**
> Dec 04, 2017
> DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF
KENTUCKY

O R D E R

Before:  GILMAN, ROGERS, and SUTTON, Circuit Judges.

Douglas Walter Greene, a pro se plaintiff, appeals the district court's judgment granting

summary judgment to the defendants in the above-captioned cases.  These cases have been

referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See* Fed. R. App. 34(a).

Greene was a pilot for United Parcel Service (UPS) from 1994 until November 2013. In 2013, Greene became embroiled in a dispute with UPS over a note in the Exception History Report (EHR) of his personnel file that recorded an incident in which he was discovered carrying small grooming scissors in his bag after flying "jumpseat" with FedEx. The scissors were prohibited by FedEx regulations but not by the Transportation Safety Administration. The EHR was critical of Greene's conduct, but the Independent Pilots Association (IPA), the collective bargaining unit that represents pilots employed by UPS, did not file a grievance on Greene's behalf because EHR notations are considered non-disciplinary under the collective bargaining agreement (CBA). The IPA, however, was successful in persuading UPS to supplement the EHR with a note from FedEx's chief pilot that stated that Greene was courteous to FedEx's security team during the incident. Greene nevertheless became fixated on the incident, and UPS received complaints from some pilots that he was harassing and intimidating them in an attempt to get information about Assistant Chief Pilot Jim Psiones, who first spoke to Greene about the incident.

UPS suspended Greene from flight operations based on his behavior in this incident, as well as claims that Greene made in a subsequent meeting that UPS and the IPA were conspiring against him with regard to some ongoing tax matters he had with the State of Kentucky. UPS's investigation prompted the chief pilot to order Greene to undergo a medical examination based on a CBA provision that authorizes UPS to order a non-routine medical examination "[i]f there is objective medical evidence indicating that a crewmember has a medical problem which could interfere with his ability to safely function as a crewmember." UPS terminated Greene for insubordination after his third refusal to submit to an evaluation.

Greene filed twelve grievances related to his suspension from flight duty, the collateral consequences of his suspension, and his termination. The IPA and UPS agreed to hold all but Greene's termination grievance in abeyance because some of his grievances concerned non-disciplinary matters and because his termination grievance was potentially dispositive of other grievances. The IPA retained outside counsel to represent Greene because of prior conflicts that

Greene had had with IPA officials.  The IPA also permitted Greene to be represented by his own attorney.  Greene's termination grievance proceeded to an evidentiary hearing before an arbitrator.  The arbitrator ruled that Greene's erratic behavior, coupled with other statements that he had made that suggested that he was taking pain medication to treat a back injury, gave UPS sufficient reason to believe that Greene had a medical problem that could affect his ability to function as a pilot, and that Greene's refusal to submit to a medical evaluation provided just cause under the CBA for UPS to terminate him for insubordination.  The arbitrator therefore upheld Greene's termination.

Mark Sommer, an attorney who was representing Greene in state tax matters, joined the Frost Brown Todd (FBT) law firm during the pendency of Greene's arbitration proceedings.  Tony Coleman, who was also an attorney employed by FBT, represented UPS in Greene's termination and arbitration proceedings.  Coleman belatedly recognized that FBT had a conflict of interest with Greene and withdrew from representing UPS.  But, as the district court noted, "for nearly two months, Coleman, a FBT attorney, represented UPS in its termination of Greene, a FBT client."

In Case No. 16-6761, Greene filed a state-law legal-malpractice complaint against FBT, and attorneys Coleman and Sommer, alleging that their conflict of interest caused UPS to terminate his employment because of his state tax matter and prolonged the resolution of that case.  The district court granted summary judgment to the defendants because: (1) Greene could not prove that the defendants' conflict of interest caused UPS to terminate him in light of the arbitrator's decision upholding UPS's decision to dismiss Greene for refusing to submit to a medical evaluation was entitled to preclusive effect; (2) the record showed that UPS was aware of Greene's tax problems before FBT's conflict of interest arose; and (3) Greene failed to present expert testimony that showed that FBT's conflict of interest caused Sommer not to act as a reasonably prudent attorney would in seeking to resolve his tax dispute.  The district court therefore granted summary judgment in favor of FBT, Coleman, and Sommer.

In Case No. 16-6763, Greene filed a complaint against the IPA and several individual officers of the IPA, alleging that the IPA breached its duty of fair representation under the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.*, in several ways, and that the IPA violated the

Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 401 *et seq.*, by retaliating against him because he was critical of the union and because he had supported an opposition candidate for union president. The district court concluded that Greene's fair-representation claims failed because he did not produce evidence showing that the IPA's representation was arbitrary, discriminatory, or in bad faith, and that Greene's LMRDA-retaliation claim failed because he was not subjected to formal discipline by the IPA. The district court therefore granted summary judgment to the defendants.

In Case No. 16-6772, Greene filed a complaint against the IPA/UPS System Board of Adjustment to vacate the arbitrator's award upholding his termination. The district court granted motions to intervene filed by the IPA and UPS. The district court granted summary judgment to the IPA and UPS because Greene failed to establish any of the grounds available under the RLA for vacating the arbitrator's award.

Greene filed a timely notice of appeal in each of these cases, and we consolidated them for disposition.

We review a district court's order granting summary judgment de novo. *See Wheat v. Fifth Third Bank*, 785 F.3d 230, 236 (6th Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to dispose of the issues presented in a logical manner, we address Greene's appeals out of numerical sequence.

### A. Case No. 16-6763

Greene claimed that the IPA breached its duty of fair representation to him under the RLA in a number of ways, including prohibiting him from contacting union staff about his grievances, refusing to prosecute eleven of his grievances, refusing to disclose documents from its Professional Standards Committee, refusing to assist him in correcting his EHR report, and failing to keep him apprised of various procedural matters in the arbitration proceedings. Greene also claimed that the IPA violated the LMRDA by retaliating against him for participating in political activities within the union.

The RLA imposes an implied duty on the union to fairly represent its members. *See Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010). To

establish that the union breached its duty of fair representation, the plaintiff must prove that the union acted arbitrarily, discriminatorily, or in bad faith. *See id.* A union acts arbitrarily if its conduct was "so far outside a wide range of reasonableness" that it was "wholly irrational." *Id.* (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). To show that the union acted discriminatorily, the plaintiff must "adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Id.* (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)). A union acts in bad faith when "it acts with an improper intent, purpose, or motive . . . encompass[ing] fraud, dishonesty, and other intentionally misleading conduct." *Id.* (quoting *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). Our review of the union's performance is highly deferential. *See Blesedell v. Chillicothe Tel. Co.*, 811 F.3d 211, 223 (6th Cir. 2016).

The IPA's decision to proceed with Greene's potentially dispositive termination grievance first and hold his other grievances in abeyance was an efficient and therefore sensible manner in which to handle his case. Similarly, the IPA's restrictions on Greene's ability to communicate with union staff and its decision to hire outside counsel to represent him were rational in light of his hostility toward the union's leadership and legal staff. The IPA's decision not to give Greene access to allegedly exculpatory documents from its Professional Standards Committee, which is a mechanism to resolve disputes between union members, was also rational in view of the IPA's need to preserve confidentiality and to promote safety and efficient dispute resolution. The record shows that the IPA did what it could under the circumstances to mitigate the negative information in Greene's EHR report concerning the scissors incident. Consequently, Greene has not shown that the IPA acted arbitrarily. Greene's appellate brief consists mainly of ad hominem attacks on other UPS employees and unsupported claims that the IPA colluded with UPS to terminate him, but he has not pointed to any evidence that shows that the IPS acted discriminatorily or in bad faith in representing him.

Greene also claimed that the IPA retaliated against him for criticizing the union and opposing the incumbent president in violation of the LMRDA. As the district court correctly found, however, the IPA was entitled to summary judgment because Greene failed to produce

evidence showing that he was punished through an established union disciplinary process. *See United Food & Commercial Workers Int'l Union Local 911 v. United Food & Commercial Workers Int'l Union*, 301 F.3d 468, 474 (6th Cir. 2002).

Accordingly, we affirm the district court's judgment in this case.

## B. Case No. 16-6772

Greene moved to vacate the arbitrator's award upholding his termination.  The district court concluded that Greene failed to present evidence that supported vacating the arbitrator's award on any of the grounds permissible under the RLA and granted summary judgment to the IPA and UPS.

Federal courts' review of labor-arbitration decisions is very limited.  As long as the arbitrator is even arguably acting within the scope of his authority, a court may not overturn his decision because it believes he committed serious error.  *See Mich. Family Res., Inc. v. SEIU Local 517M*, 475 F.3d 746, 752 (6th Cir. 2007) (en banc).  We may overturn the decision of an RLA-created adjustment board for three reasons only:  (1) failure of the board to comply with the requirements of the RLA; (2) failure of the board to confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption.  *See Airline Prof'l Ass'n of Int'l Bhd. of Teamsters, Local Union No. 1224 v. ABX Air, Inc.*, 274 F.3d 1023, 1030 (6th Cir. 2001); *see also* 45 U.S.C. § 153(q).  Review under the first ground is generally limited to determining whether the arbitrator complied with the procedural obligations of the RLA.  *See United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 811 (2d Cir. 2009) (collecting cases).  An arbitrator acts outside the scope of his jurisdiction only if the award fails to draw its essence from the terms of the CBA.  *See Airline Prof'l Ass'n*, 274 F.3d at 1030.  The arbitrator's award is a product of fraud or corruption if he exhibited complete unwillingness to respond to any evidence or argument in support of one of the parties' positions.  *See Green v. Grand Trunk W. R.R., Inc.*, 155 F. App'x 173, 176 (6th Cir. 2005).

Greene's brief does not point to any procedural requirements of the RLA that the arbitrator allegedly violated in issuing his award.  Greene's argument that the award was the product of fraud and corruption is based largely, if not entirely, on claims of collusion between the arbitrator, the IPA, and UPS that lack any factual support in the record or, alternatively,

reflect nothing more than his disagreement with the arbitrator's evidentiary and procedural rulings and factual findings.  *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 40 (1987) (stating that courts do not hear claims of factual, legal, or procedural error by the arbitrator).  Accordingly, Greene failed to make any showing that the arbitrator failed to comply with the RLA or that the award was the result of fraud and corruption.

An arbitrator's award fails to draw its essence from the CBA only if the award: (1) conflicts with the express terms of the agreement; (2) imposes additional requirements that are not expressly provided in the agreement; (3) is without rational support or cannot be rationally derived from the terms of the agreement; or (4) is based on general considerations of fairness and equity rather than the precise terms of the agreement.  *See Airline Prof'l Ass'n*, 274 F.3d at 1030.  We must uphold the arbitrator's award as long as he was arguably construing the agreement, even if we are convinced that he made a serious error.  *See United Paperworkers*, 484 U.S. at 38.

The CBA in this case authorized UPS to order a pilot to undergo a non-routine medical evaluation if there was "objective evidence indicating that a crewmember has a medical problem which could interfere with his ability to safely function as a crewmember."  The arbitrator construed this provision as authorizing UPS to order a non-routine medical evaluation if it had a good faith basis for believing that a pilot had a medical problem that impaired his performance.  The arbitrator then made factual findings that UPS had sufficient objective evidence, based on Greene's back injury and unusual behavior, to invoke this provision.  Finally, the arbitrator made the legal conclusion that Greene's insubordination in refusing to submit to a medical evaluation provided just cause under the CBA to terminate him.  The arbitrator's decision shows that he was engaged in construing the CBA and thus that his award drew its essence from the CBA.

Greene has not shown that the award conflicts with any express terms of the CBA, imposes any additional requirements not expressly provided by the CBA, is without rational support or is not rationally derived from the terms of the CBA, or is based on considerations of fairness and equity rather than the terms of the agreement.  Greene argues that the arbitrator's award conflicts with the CBA's provision that states that the purpose of a medical examination is to "aid and assist [crewmembers] in maintaining their physical health and prolonging their

career." Greene overlooks, however, that the goals of this provision might have been furthered had he complied with the order to undergo an examination. The arbitrator's award does not conflict with this provision. Greene also claims that the arbitrator's award conflicts with certain notice and discovery provisions of the CBA. The arbitrator, however, resolved all pre-hearing disputes, including discovery, and, as stated, those procedural rulings are not reviewable by the court. Finally, Greene claims that the arbitrator's award conflicts with CBA provisions that allegedly mandate progressive discipline over termination. The CBA specifically states, however, that upon the conclusion of the company's investigation, a crewmember may "be exonerated, disciplined, suspended or discharged." The arbitrator's award upholding Greene's termination does not conflict with the CBA.

Accordingly, we affirm the district court's judgment granting summary judgment to the defendants on Greene's complaint to vacate the arbitrator's award.

C. Case No. 16-6761

Greene filed legal-malpractice claims against FBT and attorneys Coleman and Sommer, claiming that their conflict of interest caused him to be terminated by UPS and prolonged the resolution of his state tax case.

In order to prevail on a legal malpractice claim in Kentucky, where Greene's tax investigation and arbitration hearing occurred, the plaintiff must prove that: (1) there was an employment relationship with the attorney; (2) the attorney neglected to exercise the ordinary care of a reasonably competent attorney acting in the same or similar circumstances; and (3) the attorney's negligence was the proximate cause of damage to the client. *See Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003). To demonstrate causation, the plaintiff must show that he would have fared better on the underlying claim but for the attorney's negligence. *See id.* The district court concluded that Greene failed to show that FBT's conflict of interest caused any harm and granted summary judgment to the defendants.

Greene's appellate brief discusses at length his theory that FBT, and in particular attorney Coleman, were the impetus for the State of Kentucky's tax investigation and that the Kentucky Department of Revenue, the IPA, UPS, FBT, Coleman, and the arbitrator conspired to drum up false insubordination charges against him in order to rid UPS of an allegedly troublesome

employee.  Greene's theory is not supported by any reasonable reading of the record.  Greene makes little or no effort to show that the district court erred in finding that he failed to demonstrate a triable issue of fact on the issue of causation.  In any event, FBT's unrebutted evidence shows that UPS was aware of Greene's tax problems in 2011, well before proceedings were instituted to terminate him for failing to submit to a medical evaluation.  Moreover, the arbitrator's award makes clear that UPS terminated Greene because he failed to submit to a medical evaluation and that, except as evidence pertaining to Greene's state of mind, the tax investigation played no part in UPS's termination decision or the arbitrator's award.  There is no evidence to suggest that the two-month period in which FBT was in a conflict position with Greene prolonged the conclusion of the state tax matter.  Accordingly, we affirm the district court's grant of summary judgment to the defendants on Greene's legal malpractice claim.

Conclusion

We **AFFIRM** the district court's judgment in each case.  Greene also filed a complaint and an amended complaint in Case No. 16-6772, alleging new claims against UPS and UPS pilot Peyton Horace Cook III for perjury, conspiracy to defraud the United States, and misprision of felony, and the defendants in that case have filed motions to dismiss or strike Green's complaints.  Greene's complaints are not properly before us.  *See Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008) (stating that federal courts of appeal have jurisdiction to hear only "final judgments" rendered by district courts) (citing 28 U.S.C. § 1291)); *In re Cannon*, 277 F.3d 838, 848 (6th Cir. 2002) (noting that a reviewing court will not consider issues raised for the first time on appeal).  Accordingly, we **GRANT** the motions to strike Greene's complaints and **DENY** all other pending motions.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk